**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **BOBBY J. CHAPMAN,**<br><br>      **Plaintiff,**<br><br>    v.<br><br>**TRINITY HIGHWAY PRODUCTS, LLC, and TRINITY INDUSTRIES, INC.,**<br><br>      **Defendants.** | 1:17-cv-575-WSD |

## OPINION AND ORDER

This matter is before the Court on Defendant Trinity Industries, Inc.'s ("TI") Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction [5] ("Motion to Dismiss for Lack of Personal Jurisdiction"), Defendants Trinity Highway Products, LLC ("THP") and TI's (together, "Defendants") Rule 12(b)(6) Motion to Dismiss Count V of Plaintiff's Complaint for Failure to State a Claim [6] ("Motion to Dismiss for Failure to State a Claim"), Plaintiff Bobby J. Chapman's ("Plaintiff") Motion for Remand [9], and Plaintiff's Motion to Stay the Court's Ruling on Defendant's Motion to Dismiss Pending Ruling on Plaintiff's Motion for Remand [10] ("Motion to Stay").

**I.   BACKGROUND**

On May 20, 2015, Plaintiff filed his Complaint [1.2] ("Original Complaint") in the State Court of Fulton County, asserting product liability claims against Defendants TI and THP.  The Original Complaint alleged that, on May 22, 2013, "Plaintiff was traveling north on Interstate 85 in the right lane and, after losing consciousness, slowly veered into and struck a guardrail."  (Orig. Compl. ¶ 6). Plaintiff alleged that "the guardrail was defectively designed in that it acted like a spear and penetrated through the front of and all the way through the back of the vehicle, which resulted in Plaintiff sustaining severe and significant injuries." (Orig. Compl. ¶ 8).  Defendants did not remove the case to federal court and, on July 15, 2016, Plaintiff voluntarily dismissed the Original Complaint without prejudice.  ([9.7]).

On January 13, 2017, Plaintiff, represented by new counsel, filed his second Complaint [1.1] ("Renewed Complaint") in the State Court of Fulton County.  The Renewed Complaint, like the Original Complaint, asserts product liability claims arising out of Plaintiff's car accident on May 22, 2013.[1]  On January 17, 2017,

---

[1]   Both complaints assert claims for negligence, failure to warn, strict product liability, breach of express and implied warranties, and punitive damages.

Defendants received, by email, a copy of the Renewed Complaint[2] and, on February 15, 2017, they removed this action to federal court on the basis of diversity jurisdiction. ([1]; [9.9]; [15] at 2).

On March 6, 2017, Defendants filed their Motions to Dismiss. On March 17, 2017, Plaintiff moved to remand this case to state court on the grounds that Defendants' Notice of Removal [1] was not timely filed. Plaintiff also seeks to stay Defendants' Motions to Dismiss pending the Court's ruling on his Motion for Remand.

## II.  PLAINTIFF'S MOTION FOR REMAND

### A.  Legal Standard

A notice of removal must be filed within the time period prescribed by 28 U.S.C. § 1446:

> **(b) Requirements; generally.—(1)** The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
>
> . . . .

---

[2]  On January 20, 2017, Defendants waived service of process and summons. ([1.1] at 39-40).

3

**(3)** Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

**(c) Requirements; removal based on diversity of citizenship.—(1)** A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action.

28 U.S.C. §§ 1446(b)-(c).

Under subsection (b)(1), a notice of removal must be filed within 30 days after the defendant receives a copy of the "initial pleading" on which the action is based. See Allen v. Christenberry, 327 F.3d 1290, 1296 n.3 (11th Cir. 2003) ("Generally, a defendant can only remove a case to federal court within 30 days after receiving the pleading."). Subsection (b)(3) provides additional time for removal "if the case stated by the initial pleading is not removable." If that condition is triggered, the notice of removal may be filed within 30 days after defendant receives a "paper from which it may first be ascertained that the case is" removable. Subsection (c) states that, unless plaintiff acted in bad faith, a diversity case may not be removed under subsection (b)(3) more than one year after the action "commenced." Subsection (c) does not modify or limit the 30-day period in subsection (b)(1). See Lee v. Lilly Trucking of Virginia, Inc., No. 2:12-CV-74-

MEF, 2012 WL 960989, at *1 (M.D. Ala. Mar. 21, 2012) (noting that Section 1446(b) reflects a "bifurcated removal approach," and that, "[a]s set forth in the plain language of the statute, a state court defendant may remove a case to federal court at two procedurally distinct moments in time").

B. <u>Analysis</u>

Plaintiff claims this action should be remanded because Defendants' Notice of Removal is untimely under Section 1446. Plaintiff argues that, because this is a renewed action under O.C.G.A. § 9-2-61, the date of his original action determines the timeliness of removal under Section 1446. Defendants argue that Plaintiff's Renewed Complaint controls the timeliness of removal because it constitutes a separate action for the purposes of Section 1446. ([15] at 2).

Under Georgia law, "[a] civil action is commenced by filing a complaint with the court." O.C.G.A. § 9-11-3(a). Plaintiff's Renewed Complaint was filed pursuant to O.C.G.A. § 9-2-61, which provides:

> When any case has been commenced in either a state or federal court within the applicable statute of limitations and the plaintiff discontinues or dismisses the same, it may be recommenced in a court of this state or in a federal court either within the original applicable period of limitations or within six months after the discontinuance or dismissal, whichever is later, subject to the requirement of payment of costs in the original action as required by subsection (d) of Code Section 9-11-41; provided, however, if the dismissal or discontinuance occurs after the expiration of the applicable period of limitation, this privilege of renewal shall be exercised only once.

5

O.C.G.A. § 9-2-61(a). "A voluntary dismissal terminates the action completely [and] [a]n action renewed pursuant to OCGA § 9-2-61(a) is an action *de novo*." Wright v. Robinson, 426 S.E.2d 870, 872 (Ga. 1993) (citation omitted). This is consistent with the plain language of Section 9-2-61, which allows a case to be dismissed and "recommenced." O.C.G.A. § 9-2-61(a). The "recommencement" grants plaintiff a limited exception to the limitations bar. That is, the renewed action does not "bring[] with it all the baggage of the first suit" and, except for the statute of limitations, which is suspended in renewed actions, "all other aspects of the case [are] unaffected" by the original lawsuit. Granite State Ins. Co. v. Nord Bitumi U.S., Inc., 422 S.E.2d 191, 195 (Ga. 1992); see Carter v. VistaCare, LLC, 335 Ga. App. 616, 618, 782 S.E.2d 678, 682 (2016) (stating that the renewal statute "suspend[s] the running of the statute of limitations"). "[P]rocedural prerequisites, service of process, defenses, etc, must be met, pled, and adjudicated anew," and no Georgia case has applied the renewal statute "to a time limit other than a statute of limitation." Womack-Sang v. Publix Supermarkets, Inc., No. 1:12-CV-4189-ODE, 2013 WL 12073467, at *2 (N.D. Ga. Feb. 21, 2013).

In view of this authority, the Court finds that Plaintiff's Renewed Complaint constitutes the "initial pleading" on which this action is based. 28 U.S.C. § 1446(b)(1). Plaintiff's Original Complaint was voluntarily dismissed and thus

6

"terminate[d] . . . completely." Wright, 426 S.E.2d at 872. Plaintiff's Renewed Complaint constitutes a "*de novo* action" and, except for the statute of limitations, which is not at issue here, the case is "unaffected" by Plaintiff's Original Complaint. Id.; Granite State, 422 S.E.2d at 195. Defendants first received a copy of the Renewed Complaint on January 17, 2017, and filed their Notice of Removal on February 15, 2017, less than thirty days later. The Notice of Removal is timely under Section 1446(b)(1), and Plaintiff's Motion for Remand is denied.[3]

---

[3] Plaintiff relies on McDuffie v. Davidson, No. 1:15-CV-03360-CAP, 2015 WL 10960936 (N.D. Ga. Nov. 3, 2015), Thompson v. Belk, Inc., No. 1:13-CV-1412-WSD, 2013 WL 5786587 (N.D. Ga. Oct. 28, 2013), and Hattaway v. Engelhard Corp., 998 F. Supp. 1479 (M.D. Ga. 1998), which found that, under Section 1446(c), a "renewed action is deemed to have 'commenced' on the date the original complaint was filed." Thompson, 2013 WL 5786587, at *2. These cases are distinguishable because they were decided on the basis of subsection (c). The Court in this case finds removal proper under subsection (b)(1). Even if the cases cited by Plaintiff were applicable here, the Court finds the reasoning in Womack-Sang, 2013 WL 12073467, more persuasive. The court, in Womack-Sang, emphasized that, under Georgia law, "a civil action is commenced by filing a complaint with the court." O.C.G.A § 9-11-3(a). The court found that "[t]he renewal statute does not change the commencement date of the second action—that is still the date the complaint was filed—but rather, the renewal statute simply suspends the running of the statute of limitations." Womack-Sang, 2013 WL 12073467, at *2. The court also found that "[b]y its very terms the renewal statute states the second, renewed, action is 'recommenced' after the voluntary dismissal," and thus an action literally "commences" again, under Section 1446(c), on the filing date of the renewed complaint. Id.

7

## III. TI'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A. Legal Standard

"A plaintiff's complaint is subject to dismissal if there is a lack of personal jurisdiction over the defendant." Techjet Innovations Corp. v. Benjelloun, 203 F. Supp. 3d 1219, 1222 (N.D. Ga. 2016). Plaintiff bears the burden of establishing jurisdiction. Consolidated Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1291 (11th Cir.2000); Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc., 593 F.3d 1249, 1257 (11th Cir.2010). "In the context of a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is held, the plaintiff bears the burden of establishing a *prima facie* case of jurisdiction over the movant, non-resident defendant." Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir.1988). "A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990). "A party presents enough evidence to withstand a motion for directed verdict by putting forth 'substantial evidence of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions.'" Techjet Innovations, 203 F. Supp. 3d at 1222 (quoting Walker v. NationsBank of Florida, 53 F.3d 1548, 1554 (11th Cir.1995)).

"The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." Madara, 916 F.2d at 1514. "Where, as here, the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." Diamond Crystal, 593 F.3d at 1257. "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." Id.

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009). Georgia's long-arm statute provides limited circumstances in which a court may exercise personal jurisdiction over a nonresident defendant:

> A court of this state may exercise personal jurisdiction over any nonresident or his or her executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she:
>
> (1) Transacts any business within this state;

9

> (2) Commits a tortious act or omission within this state . . . ; [or]
>
> (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state.

O.C.G.A §§ 9-10-91(1)-(3).[4]

"The Due Process Clause requires that the defendant's conduct and connection with the forum State be such that he should reasonably anticipate being haled into court there." Diamond Crystal, 593 F.3d at 1267 (internal quotation marks omitted) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)). "The heart of this protection is fair warning" to the defendant. Id.; see Licciardello v. Lovelady, 544 F.3d 1280, 1284 (11th Cir. 2008) ("The Constitution prohibits the exercise of personal jurisdiction over a nonresident defendant unless his contact with the state is such that he has 'fair warning' that he may be subject to suit there."). "Therefore, states may exercise jurisdiction over only those who have established certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Diamond Crystal, 593 F.3d at 1267 (quoting Helicopteros

---

[4] Section 9-10-91 includes other bases for personal jurisdiction that are not relevant here.

Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414 (1984)). "The presence of minimum contacts raises a presumption that the court may constitutionally exercise jurisdiction" and, to rebut that presumption, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1221 n.29 (11th Cir. 2009) (internal quotation marks omitted) (quoting Burger King, 471 U.S. at 477).

B. Personal Jurisdiction Under Georgia's Long-Arm Statute

Plaintiff claims the Court has personal jurisdiction under O.C.G.A § 9-10-91(1), which permits jurisdiction where a plaintiff's cause of action "arise[s] from" a nonresident defendant's "transact[ion] of any business within [Georgia]." O.C.G.A. § 9-10-91(1); Diamond Crystal, 593 F.3d at 1264. Jurisdiction is proper under this provision where "the nonresident defendant has purposefully done some act or consummated some transaction in Georgia," Diamond Crystal Brands, 593 F.3d at 1264, and "the cause of action arises from or is connected with such act or transaction," Henriquez v. El Pais Q'Hubocali.com, 500 F. App'x 824, 828 (11th Cir. 2012). "[A] defendant need not physically enter the state," and "a nonresident's mail, telephone calls, and other intangible acts, though occurring while the defendant is physically outside of Georgia, must be

considered." Diamond Crystal Brands, 593 F.3d at 1264. Courts should "examine all of a nonresident's tangible and intangible conduct and ask whether it can fairly be said that the nonresident has transacted any business within Georgia." Id.

The evidence shows that Defendant TI was registered to transact business in Georgia from 1987 to 2011. ([13.1] at 5-6). Plaintiff also alleges that TI "designed, manufactured, developed, marketed, promoted, tested, labeled, distributed, warranted and sold guardrails and guardrail end treatments across the United States, including in the State of Georgia, including the guardrail end treatment at issue in this case." (Ren. Compl. ¶ 5). The Court accepts Plaintiff's allegations as true because TI has not introduced evidence that directly contradicts them. Madara, 916 F.2d at 1514.[5] Plaintiff's uncontroverted allegations and evidence establish a *prima facie* case that TI "has purposefully done some act or consummated some transaction in Georgia" and that Plaintiff's claims arise out of TI's Georgia conduct. Diamond Crystal Brands, 593 F.3d at 1264.

C. Personal Jurisdiction Under the Due Process Clause

"Once a statutory basis for long-arm jurisdiction is established, the remaining question is whether the exercise of personal jurisdiction comports with

---

[5] TI's evidence shows only that it did not install the guardrail in this case, that it did not manufacture the guardrail *if* it was manufactured after January 1, 2007, and that TI does not currently do business in Georgia. (See [5.2]; [5.3]).

12

due process." United States v. Billion Int'l Trading, Inc., No. 1:11-CV-2753-WSD, 2012 WL 1156356, at *3 (N.D. Ga. Apr. 5, 2012); see Diamond Crystal, 593 F.3d at 1267. "Due process contemplates two types of jurisdiction over the person: general and specific jurisdiction." Billion Int'l Trading, 2012 WL 1156356, at *3; see Consol. Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1291 (11th Cir. 2000). "In specific jurisdiction cases, the fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." Diamond Crystal, 593 F.3d at 1267. "Put differently, the defendant must have purposefully availed itself of the privilege of conducting activities—that is, purposefully establishing contacts—in the forum state and there must be a sufficient nexus between those contacts and the litigation." Id. "Once this showing is made, a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." Id. "In determining whether jurisdiction would comport with traditional notions of fair play and substantial justice, the court looks at: (a) the burden on the defendant, (b) the forum State's interest in adjudicating the dispute, (c) the plaintiff's interest in obtaining convenient and effective relief, (d) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (e) the

shared interest of the several States in furthering fundamental substantive social policies." Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1276 (11th Cir. 2002).

Plaintiff has established a *prima facie* case of specific jurisdiction over Defendant TI. The undisputed evidence is that TI was registered to transact business in Georgia from 1987 to 2011. ([13.1] at 5-6). It also is undisputed that TI, in Georgia, "designed, manufactured, developed, marketed, promoted, tested, labeled, distributed, warranted and sold guardrails and guardrail end treatments," including the allegedly defective guardrail in this case. (Ren. Compl. ¶ 5). In light of these uncontested allegations and evidence, the Court finds that TI purposefully transacted business in Georgia and that this case arises out of TI's Georgia transactions.

Plaintiff having shown that TI engaged in minimum contacts with Georgia, the burden shifts to TI to establish a "compelling case" that the exercise of personal jurisdiction would violate traditional notions of fair play and substantial justice. Diamond Crystal, 593 F.3d at 1267. TI has not met this burden. Plaintiff lives in Georgia, the car accident that led to this action occurred in Georgia, TI was registered to transact business in Georgia for more than twenty years, including

during the period when the allegedly defective guardrail likely was installed,[6] and TI allegedly "designed, manufactured, developed, marketed, promoted, tested, labeled, distributed, warranted and sold" the defective guardrail in Georgia. (Ren. Compl. ¶ 5). Georgia has a significant interest in adjudicating this dispute, and "there is no significant burden imposed on this Defendant in having to litigate in a state where it has transacted business." Billion Int'l Trading, 2012 WL 1156356, at *4; see Diamond Crystal, 593 F.3d at 1267 (finding personal jurisdiction proper because defendant did not "explain why litigating in Georgia would be especially onerous, much less how any such inconvenience achieves a constitutional magnitude," and because "Georgia's interest in exercising jurisdiction would often justify serious burdens on a nonresident defendant"). Having transacted business in this State for more than twenty years, TI "should reasonably anticipate being haled into court []here" to defend against claims allegedly arising out of its Georgia business. Diamond Crystal, 593 F.3d at 1267. Based on the record currently before the Court, Plaintiff has established a *prima*

---

[6] TI has submitted evidence showing that the allegedly defective guardrail likely was installed between February 2008, and July 2011. ([5.3]). TI was registered to transact business in Georgia from April 13, 1987, through April 18, 2011. ([13.1] at 5-6).

15

*facie* case of personal jurisdiction over TI, and TI's Motion to Dismiss for Lack of Personal Jurisdiction is denied.

## IV. DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Defendants move to dismiss Count V of the Renewed Complaint, which asserts a claim for breach of express and implied warranties. Plaintiff, in his response brief, "agrees to dismiss Count V of his Complaint by amending his Complaint and withdrawing Count V." ([14]). In view of Plaintiff's consent to dismiss Count V from this action, Defendants' Motion to Dismiss for Failure to State a Claim is granted.[7]

## V. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Remand [9] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Trinity Industries, Inc.'s Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction [5] is **DENIED**.

---

[7] Plaintiff's Motion to Stay asks the Court to stay Defendants' Motions to Dismiss pending resolution of his Motion for Remand. Because this Order resolves all motions currently pending in this case, Plaintiff's Motion to Stay is denied as moot.

**IT IS FURTHER ORDERED** that Defendants' Rule 12(b)(6) Motion to Dismiss Count V of Plaintiff's Complaint for Failure to State a Claim [6] is **GRANTED**, and Count V of Plaintiff's Complaint is **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Stay the Court's Ruling on Defendant's Motion to Dismiss Pending Ruling on Plaintiff's Motion for Remand [10] is **DENIED AS MOOT**.

**SO ORDERED** this 7th day of September, 2017.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE